IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOUSHANG MOMENIAN<br>24510 Burnt Hill Road<br>Clarksburg, Maryland 20871<br><br>and<br><br>VIDA MOMENIAN<br>24510 Burnt Hill Road<br>Clarksburg, Maryland 20871<br><br>and<br><br>THE HOUSHANG MOMENIAN<br>REVOCABLE TRUST<br>c/o HOUSHANG MOMENIAN, TRUSTEE<br>24510 Burnt Hill Road<br>Clarksburg, Maryland 20871<br><br>Plaintiffs<br><br>v.<br><br>MICHAEL M. DAVIDSON<br>12654 Lake Ridge Drive, Suite B<br>Woodbridge, Virginia 22192<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:15-cv-00828-APM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT
(Legal Malpractice; Breach of Fiduciary Duty)

Come now the Plaintiffs, Houshang Momenian, Vida Momenian and the Houshang Momenian Revocable Trust, by their undersigned counsel, and for their Amended Complaint against the Defendant, Michael M. Davidson, state as follows:

1

## INTRODUCTION

On January 21, 2016, this Court entered a Memorandum Opinion and Order (Doc. 12) granting Defendant's Motion to Dismiss the original complaint herein on statute of limitations grounds. At page 12 of the Opinion, the Court stated that it "will afford Plaintiffs 21 days from this date [January 21, 2016] to file an amended complaint that endeavors to allege timely claims." This amended complaint is filed pursuant to such Order.

## JURISDICTION

1. Plaintiff Houshang Momenian ("Houshang") is an adult resident of the State of Maryland and is the husband of Plaintiff Vida Momenian.

2. Plaintiff Vida Momenian ("Vida") is an adult resident of the State of Maryland and is the wife of Houshang.

3. The Houshang Momenian Revocable Trust (the "Momenian Trust") is an *inter vivos* trust created by Houshang on or about December 31, 2005. Houshang is the trustee of the Momenian Trust, and Houshang and Momenian are the First and Second Beneficiaries.

4. Defendant Michael M. Davidson is an attorney who has his main office in Woodbridge, Virginia. Upon information and belief, Defendant is licensed to practice law in the District of Columbia and, as will be seen *infra*, represented Plaintiffs in litigation in the Superior Court of the District of Columbia.

5. Subject matter jurisdiction of this Court is founded upon District of Columbia Code Section 11-921, *et seq.*

6. *In personam* jurisdiction over the Defendant is premised upon the District of Columbia Long-Arm statute, D.C. Code, Sections 13-423(a)(1) (transacting business in the District of Columbia), 13-423(a)(3) (causing tortious injury in the District of Columbia by an act

or omission in the District of Columbia), and/or13-423(a)(4) (causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the defendant regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed in the District of Columbia).

## STATEMENT OF FACTS

7.  In or about 2009, Defendant undertook to represent Plaintiffs Houshang and Vida in their claim against Paul F. Interdonato and Amelia T. Interdonato, husband and wife ("the Interdonatos"). It is not known whether Plaintiffs had a written engagement agreement with Defendant. Defendant had been representing Houshang in a variety of matters over a lengthy period of time.

8.  The gravamen of Plaintiffs' claim against the Interdonatos was that they had failed to give Plaintiffs proper credits for payments made on a promissory note ("Plaintiffs' Note") in connection with the purchase of real estate in the District of Columbia. The real estate in question (the "Property") was comprised of three houses located at 527 – 529 – 531 8th Street, S.E., and had been purchased by Plaintiffs from the Interdonatos in August, 1990.

9.  Plaintiffs' Note was payable to Paul Interdonato in the amount of $265,000, and was secured against all three parcels by a First Deed of Trust.

10. In or about late 1997 or early 1998, Houshang contracted to sell a separate piece of property which he owned, known as 2616 Georgia Avenue, N.W., Washington, D.C. (the "Georgia Avenue Property"), to Charles Roberts. Mr. Roberts defaulted on the contract and, in February of 1998, he forfeited a $10,000 deposit, which was thereafter turned over by Plaintiffs

3

to the Interdonatos and should have been applied against the balance then due on Plaintiffs' Note.

11. On or about January 28, 1998, Paul Interdonato wrote a letter to Houshang confirming that the balance then due under Plaintiffs' Note was $181,167.24.

12. In or about early 1998, Houshang agreed to convey to the Interdonatos, in partial payment of Plaintiffs' Note, his interest in a Promissory Note which was payable to Houshang and secured by a Deed of Trust on the Georgia Avenue Property (the "Georgia Avenue Note"). Because the Georgia Avenue Note was in default by the maker, in or about June of 1999 the Interdonatos foreclosed on the Georgia Avenue Property and, on June 18, 1999, they purchased the Georgia Avenue Property at the foreclosure sale for the price of $85,000.

13. On or about December 21, 1999, the Interdonatos sold the Georgia Avenue Property to S. Ayize Sabater for the price of $120,000. In a hand-written document, the Interdonatos proposed to credit Plaintiffs $78,136.93 from the proceeds of the sale, after deduction of certain expenses. Plaintiffs maintained that they should have been credited with the entire $120,000 sales price. In fact, Plaintiffs never received any credit against their Note as a result of this transaction.

14. In late 1998, Plaintiffs agreed to sell two of the three houses, 527 and 529 8th Street, S.E., to Emmebet Fikru and Tesfay Guebre (collectively "Fikru"). It was originally agreed that Plaintiffs would retain ownership of the third house, 531 8th Street, S.E. ("531"). However, because the combined value of 527 and 529 8th Street was insufficient for Fikru to obtain a loan approval, Plaintiffs and Fikru agreed that Plaintiffs would convey all three parcels to Fikru, and at some time thereafter Fikru would re-convey 531 to Plaintiffs.

4

15. In order to facilitate this transaction and provide adequate substitute security for Plaintiffs' Note, Houshang proposed that the Interdonatos release their first position $265,000 Deed of Trust Note, secured by all three parcels, in return for a lump sum payment of $29,999.46 by Plaintiffs, plus a new $100,000 note from Fikru to Amelia Interdonato (the "Fikru Note"), and a second position Deed of Trust on the Property to secure the balance then due under Plaintiffs' Note. The Interdonatos agreed to this proposal.

16. On December 18, 1998, Plaintiffs and Fikru went to settlement on the sale of 527-529/531 8th Street, S.E. At that time, $29,999.46 was deducted from the amount due to Plaintiffs as sellers; such payment was identified as a "payoff of second mortgage loan". The second mortgage was held by the Interdonatos.

17. The Fikru Note was executed by Fikru on December 21, 1998, in favor of Amelia T. Interdonato, and was secured by a First Deed of Trust against all three parcels of the Property. Two days later, on December 23, 1998, the Interdonatos released their earlier First Deed of Trust on the Property, which had secured the balance then due under Plaintiffs' Note. On or about August 29, 2005, Amelia T. Interdonato assigned her interest in the Fikru Note to Paul F. Interdonato.

18. In or about late 2001, Houshang had a conversation with Paul Interdonato in which he requested Mr. Interdonato to state in writing that the $100,000 Fikru Note was intended to serve only as additional security for the Plaintiffs' Note, and not an additional obligation by Fikru. Mr. Interdonato orally agreed to write such a document, but in fact he never did.

19. In December of 2001, Fikru sought to sell 527 & 529 Eighth Street to a third party, and to do so they needed to have the Fikru Note released by Amelia Interdonato. The

Interdonatos agreed to such a release upon the condition that Plaintiffs secure the Fikru Note by granting to the Interdonatos a First Deed of Trust position on 531.

20. On January 1, 2002, Plaintiffs and the Interdonatos entered into a Note Modification Agreement in which it was agreed that, after the application of certain adjustments and credits, Plaintiffs' total outstanding indebtedness to the Interdonatos was at that time $141,898.47.[1] Under the Agreement, the $141,898.47 balance was to be payable by Plaintiffs at the rate of $1,300 per month, commencing January of 2002.

21. In or about June of 2002, in connection with Fikru's sale of 527 and 529 Eighth Street, the Interdonatos agreed to release their $100,000 First Deed of Trust Note secured by those two properties in return for a $50,000 payment to the Interdonatos by Fikru. Fikru in fact made the $50,000 payment from the proceeds of sale of the two houses to a Mr. Boyle, but Plaintiffs were not advised by the Interdonatos of such payment and never received a credit on their Note for such payment by Fikru. The entire $50,000 payment by Fikru should have been credited to Plaintiffs' Note.

22. Plaintiffs faithfully and regularly made the required $1,300 per month payments due under the Note Modification Agreement, paying a total of $197,600 (152 payments) between January, 2002 and November, 2012.

23. On August 18, 2009, Defendant filed a lawsuit on behalf of Plaintiffs against the Interdonatos in the Superior Court of the District of Columbia (the "Interdonato litigation"). *Momenian, et al. v. Interdonato, et al.*, Civil Action No. 2009 CA 006001. The complaint was styled as a "Complaint Seeking Monetary and Injunctive Relief for Failure to Credit Sums as Payments Made on Promissory Note Secured by Deed of Trust." (the "Interdonato Complaint").

---

[1] The Note Modification Agreement bears the date January 1, 2001, but it is undisputed that the correct date was January 1, 2002.

24.     The Interdonato Complaint was stated in three counts: Count One – Defendants Have Colelcted (sic) Monthly Payments, and Continue to Collect Monthly Payment (sic), from Plaintiffs Which Do Not Reflect All Credits Which Should Be Applied As Payments on the Promissory Note Held by Defendants; Count Two – Failure to Credit Amounts Collected by Defendants to Existing Promissory Note; and Count Three – Failure to Account for Funds Collected and Held.

25.     The Interdonato Complaint specified that the following funds were collected by the Interdonatos "but not included in any accounting and not included as a credit to the promissory note":

   a) the sum of $10,000 listed as "deposit" in the Contract for Sale for Georgia Avenue property;

   b) the sum of $29,999.46 which was [paid to Defendants Interdonatos and which appears on a settlement sheet for the sale of property to Fikru as paid but is listed as "payoff of second mortgage;"

   c) rents collected by Defendants for Georgia Avenue property prior to foreclosure;

   d) the sum of $50,000.00 that appears on the settlement sheet for sale from Fikru to Boyle but is listed as "payoff of second mortgage."

26.     The Interdonato Complaint prayed that the Court "1) Order defendants to provide a detailed accounting for these funds; 2) Order Defendants to credit the amount of these funds to the existing promissory note loan balance secured by a Deed of Trust; 3) Order Defendants to pay interest on the funds from the date the funds were collected; 4) award pre-judgment interest as well as attorneys' fees and costs of this action; 5) award monetary damages to Plaintiffs in the amount that defendants failed to credit; and 6) all other relief which this Court deems just and appropriate".

7

27.     Some discovery was conducted in the Interdonato Litigation, including the depositions of Houshang and Paul Interdonato. However, despite Houshang's repeated requests, no accountant was ever appointed by the Court or otherwise brought in by Defendant to do an analysis and computation of the amounts which should have been credited to Plaintiffs' Note.

28.     On or about October 12, 2010, Defendant advised Houshang to settle the Interdonato Litigation for a credit of $15,000 on Plaintiffs' Note. On that date, Houshang and Defendant executed a Praecipe stating that "[T]he Clerk of said Court will dismiss *with prejudice* this action. Defendants agree to credit $15,000 to Plaintiffs' Promissory Note Modification Agreement effective October 12, 2010." (emphasis added).

29.     At the time he executed this Praecipe, Houshang understood that he was only settling one aspect of the Interdonato Litigation, having to do with the $29,999.46 payment referred to in paragraph 14, *supra*. Houshang understood that the other aspects of his claim, having to do with other amounts which he claimed should have been credited to Plaintiffs' Note, would be referred to the Court and/or a Court-appointed accountant. Defendant did not adequately explain to Houshang that a dismissal with prejudice meant that there would be no further litigation over Plaintiffs' claim that other amounts should have been credited by the Interdonatos.

30.     Plaintiffs regularly made the $1,300 per month payments called for under the Note Modification Agreement. As of May 2012 they believed they were in full compliance with their obligations under that Agreement and that, if anything, they had overpaid Plaintiffs' Note.

31.     At some time prior to May 7, 2012, Plaintiffs conveyed their title to 531 to the Momenian Trust.

32. Defendant continued to represent Plaintiffs with regard to the Interdonato matter subsequent to October 12, 2010, as evidenced by an invoice from Defendant to Houshang for the period December 1, 2010 to May 15, 2011. On the invoice are the following entries:

> Promissory note issues
>    December – Preparation of ltr. to atty. Interdonato enclosing promissory note schedule print-out by accountant (12/3/10)
>    January to April – left telephonic message for atty. Interdonato; conference w/HM to discuss promissory note, review of document prepared by HM; telephonic conferences w/ accountant, forwarding documents to accountant; review of preliminary revised print-out & telephonic conference w/HM re same
>        NO CHARGE

33. During 2011 and early 2012, Houshang telephoned Defendant approximately every three months to discuss the Interdonato matter as well as another pending case. During those conversations, Houshang asked Defendant when he would have an opportunity to go before a judge; Defendant responded generally that he was working on it.

34. On May 7, 2012, Paul F. Interdonato issued a Notice of Foreclosure against the Houshang Trust, claiming that the balance due on the Plaintiffs' Note as of January 21, 2012 was approximately $238,383.44, and that the Note was in default.

35. On or about June 14, 2012, with the assistance of new counsel, the Houshang Trust filed a Complaint for an Injunction and a Motion for Temporary Restraining Order in the Superior Court of the District of Columbia, seeking to stop the foreclosure and challenging the amounts which Mr. Interdonato claimed were due (the "Foreclosure Litigation"). *Momenian, Trustee, et al. v. Interdonato*, Case No. 2012 CA 005024 B.

36. On November 2, 2012, upon the advice of new counsel, the Houshang Trust entered into a Settlement Agreement and Mutual Release of Claims with Mr. Interdonato which resolved the Foreclosure Litigation. Under such Agreement, the Houshang Trust agreed to pay

Mr. Interdonato the sum of $85,000, in addition to what had already been paid, in full and final satisfaction of Plaintiffs' Note.

37. One of the reasons why the Houshang Trust decided to pay Mr. Interdonato another $85,000 under Plaintiffs' Note, when it believed that the Note had already been overpaid, was because Houshang was advised by new counsel that the doctrine of *res judicata* prevented re-litigation of the issues which had been resolved by the settlement in the Interdonato Litigation handled by Defendant.

38. On January 31, 2013, Houshang met with Defendant at a restaurant in Virginia to discuss the Interdonato matter. During that conversation, which was legally recorded by Houshang, Houshang expressed his dismay that he had "given up his rights" at the time he signed the settlement praecipe in October of 2010. Defendant assured Houshang that "[y]ou did not forfeit any of your rights on that." He also stated that "[w]e knew that this was just the beginning of what's going to happen." These statements were consistent with what Defendant had told Houshang both at the time the case was dismissed and in a number of conversations subsequent thereto, i.e. that other claims which Plaintiffs had against the Interdonatos would continue to be litigated.

## COUNT ONE
### (Legal Malpractice)

39. Plaintiffs incorporate by reference the facts and allegations set forth in paragraphs one through thirty-eight of this Amended Complaint into this, the first count thereof.

40. Defendant, having agreed to be retained as their attorney by Plaintiffs, had a duty to use that degree of care reasonably expected of other legal professionals with similar skills acting under the same or similar circumstances.

10

41.     Defendant breached his said duty of care by:

    a. Failing to conduct an adequate investigation and analysis of the case he filed against Interdonato, prior to advising Plaintiffs to settle the case, in order to accurately calculate the amounts which ought to have been credited to Plaintiffs' Note and the correct balance due under such Note, if any.

    b. Failing to secure the services of a qualified accountant, either by retaining one or seeking Court appointment of one, prior to advising Plaintiffs to settle the case, in order to accurately calculate the amounts which ought to have been credited to Plaintiffs' Note and the correct balance due under such Note, if any.

    c. Advising Houshang to settle the Interdonato Litigation without first having performed an adequate analysis or received an accurate accounting of the amount due, if any, under Plaintiffs' Note;

    d. Failing to explain to Houshang that the October 12, 2010 Praecipe which was executed by Houshang and Mr. Interdonato in the Interdonato Litigation constituted a full and final settlement of all of Plaintiffs' claims against the Interdonatos, and that such claims could not legally be brought again.

    e. Failing to explain the meaning of the phrase "dismiss with prejudice" that was used on the October 12, 2010 Praecipe, or the legal consequences of such a dismissal.

42.     As a direct and proximate result of Defendant's breaches of his duty of care, as aforesaid, Plaintiffs have suffered substantial and permanent damages, including but not limited to the loss of approximately $400,000, which includes amounts which were overpaid by Plaintiffs' and the Houshang Trust to the Interdonatos on Plaintiffs' Note, plus attorneys' fees incurred in the Foreclosure Litigation, plus accounting fees incurred in finally calculating the

amounts which were overpaid on the Plaintiffs' Note.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant for legal malpractice in the amount of Four Hundred Thousand Dollars ($400,000), plus pre-judgment and post-judgment interest, costs and reasonable attorneys' fees, and such other and further relief as the Court may find justified under the circumstances.

## COUNT TWO
### (Breach of Fiduciary Duty)

43. Plaintiffs incorporate by reference the facts and allegations set forth in paragraphs one through forty-two of this Amended Complaint into this, the second count thereof.

44. At all times during his representation of Plaintiffs, Defendant had a fiduciary duty to Plaintiffs to act in good faith for their benefit, and to provide them with accurate information.

45. Specifically, Defendant had a duty, pursuant to the District of Columbia Rules of Professional Conduct, Rule 1.4(a) and (b), to "keep [Plaintiffs] reasonably informed about the status of [the] matter and promptly comply with reasonable requests for information", and to "explain [the] matter to the extent reasonably necessary to permit [Plaintiffs] to make informed decisions regarding the representation."

46. Defendant breached its fiduciary duty to Plaintiffs by:

a. Failing to conduct an adequate investigation and analysis of the case he filed against Interdonato, prior to advising Plaintiffs to settle the case, in order to accurately calculate the amounts which ought to have been credited to Plaintiffs' Note and the correct balance due under such Note, if any.

b. Failing to secure the services of a qualified accountant, either by retaining one or seeking Court appointment of one, prior to advising Plaintiffs to settle the case, in order to accurately calculate the amounts which ought to have been credited to Plaintiffs' Note and the

correct balance due under such Note, if any.

  c. Advising Houshang to settle the Interdonato Litigation without first having performed an adequate analysis or received an accurate accounting of the amount due, if any, under Plaintiffs' Note.

  d. Failing to explain to Houshang that the October 12, 2010 Praecipe, which was executed by Houshang and Mr. Interdonato in the Interdonato Litigation, constituted a full and final settlement of all of Plaintiffs' claims against the Interdonatos, and that such claims could not legally be brought again.

  e. Failing to explain the meaning of the phrase "dismiss with prejudice" that was used on the October 12, 2010 Praecipe, or the legal consequences of such a dismissal.

  47. As a direct and proximate result of Defendant's breaches of his fiduciary duty, as aforesaid, Plaintiffs have suffered substantial and permanent damages, including but not limited to the loss of approximately $400,000, which includes amounts which were overpaid by Plaintiffs' and the Houshang Trust to the Interdonatos on Plaintiffs' Note, plus attorneys' fees incurred in the Foreclosure Litigation, plus accounting fees incurred in finally calculating the amounts which were overpaid on the Plaintiffs' Note.

  WHEREFORE, Plaintiffs respectfully demand judgment against Defendant for breach of fiduciary duty in the amount of Four Hundred Thousand Dollars ($400,000), plus pre-judgment and post-judgment interest, costs and reasonable attorneys' fees, and such other and further relief as the Court may find justified under the circumstances.

respectfully submitted,

HOUSHANG MOMENIAN
VIDA MOMENIAN
THE HOUSHANG MOMENIAN
REVOCABLE TRUST
Plaintiffs
By Counsel

CROWLEY, HOGE & FEIN, P.C.

By: /s/ Christopher G. Hoge
     Christopher G. Hoge #203257

Attorneys for Plaintiffs
1730 Rhode Island Avenue, N.W.
Suite 1015
Washington, D.C. 20036
(202) 483-2900

## JURY DEMAND

Plaintiffs hereby demand trial by jury as to all issues of fact raised herein.

                                          /s/ Christopher G. Hoge
                                          Christopher G. Hoge

cgh/z/wpdirs/civ
momenianamendedcpl.doc

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Amended Complaint was filed electronically and served via the CM/ECF System this 10th day of February, 2016, upon Alfred L. Scanlan, Esq. and James N. Markels, Esq., attorneys for Defendant, Jackson & Campbell, P.C., 1120 20th Street, N.W., South Tower, Third Floor, Washington, D.C. 20036-3437.

/s/ Christopher G. Hoge