# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Houshang Momenian, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 15-cv-00828 (APM) |
| ) | |
| Michael M. Davidson, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

On May 6, 2015, Plaintiffs Houshang Momenian and Vida Momenian filed suit against their former lawyer, Defendant Michael Davidson, for legal malpractice and breach of fiduciary duty.  After the court dismissed the original Complaint on statute-of-limitations grounds, Plaintiffs filed an Amended Complaint on February 10, 2016, which attempted to cure the statute-of-limitations deficiencies of the original Complaint by adding several new allegations.  Defendant has moved once again to dismiss all claims.  He asserts, among other arguments, that Plaintiffs' claims are untimely, even as amended.

After reviewing the Amended Complaint and evaluating the parties' arguments, the court concludes that Plaintiffs' new allegations have not saved their claims from the statute-of-limitations bar.  The court therefore grants Defendant's Motion to Dismiss and dismisses this action with prejudice.

## II.     BACKGROUND

### A.     Factual Background

The court previously set forth the factual background of this case in its January 21, 2016, Memorandum Opinion and Order, which addressed Defendant's first Motion to Dismiss. *See generally Momenian v. Davidson*, Civ. No. 1:15-cv-00828 (APM), 2016 WL 259641, at *1-2 (D.D.C. Jan. 21, 2016) [hereinafter *Momenian I*]; *see also generally* Def.'s Mot. to Dismiss, ECF No. 7.  The court presumes familiarity with the facts as stated in that opinion and thus provides only a short summary of the relevant allegations, as well as the new allegations presented by Plaintiffs in support of their claims.

#### 1.     Summary

Plaintiffs are a husband and wife who, in 1990, purchased three adjacent properties in Southeast Washington, D.C., from Paul and Amelia Interdonato.  Am. Compl., ECF No. 13, ¶¶ 1-2, 8.  In exchange for the properties, Plaintiffs executed a $265,000 promissory note payable to Paul Interdonato, which was secured by a Deed of Trust Note.  *Id.* ¶ 9.  In 2009, Plaintiffs filed a lawsuit against the Interdonatos in D.C. Superior Court, alleging that the Interdonatos had failed to credit various payments to Plaintiffs' promissory note.  *Id.* ¶ 23.  Defendant served as Plaintiffs' lawyer in that case.  *Id.*

On October 12, 2010, based on Defendant's advice, Plaintiffs settled their lawsuit against the Interdonatos (the "Settlement").  *Id.* ¶ 28.  Under the terms of the Settlement, Plaintiffs agreed to a $15,000 credit against their promissory note in exchange for the dismissal, with prejudice, of their lawsuit against the Interdonatos.  *Id.*  A year and a half later, on May 7, 2012, Plaintiffs and the Interdonatos again became embroiled in litigation when the Interdonatos issued a Notice of

Foreclosure against Plaintiffs regarding the same properties at issue in the earlier action. *Id.* ¶ 34. Once again, Plaintiffs settled the matter. *Id.* ¶ 36.

Two and a half years after the second settlement, on May 6, 2015, Plaintiffs filed a Complaint against Defendant in D.C. Superior Court, which was then removed to this court. *See generally* Compl., ECF 1, Ex. A, ECF No. 1-1 [hereinafter Compl.]. Plaintiffs alleged that, because Defendant was negligent in explaining the scope and preclusive effect of the Settlement, they did not understand that a "dismissal with prejudice meant that there would be no future litigation over Plaintiffs' claim that other amounts should have been credited by the Interdonatos." *Id.* ¶ 27. They also averred that they repeatedly asked Defendant to hire an accountant, or seek court appointment of one, to analyze and compute the amounts the Interdonatos should have credited to Plaintiffs, but that Defendant failed to engage such a person. *Id.* ¶ 25. This court ultimately dismissed Plaintiffs' Complaint, without prejudice, on statute of limitations grounds. *See generally Momenian I*, 2016 WL 259641. The court did not dismiss the action in its entirety, however, and instead afforded Plaintiffs an opportunity to amend their Complaint. *See id.* at *7.

### 2.    *The Amended Complaint*

On February 10, 2016, Plaintiffs timely filed their Amended Complaint. *See* Am. Compl. Although Plaintiffs' general claims of malpractice and breach of fiduciary duty by Defendant remained the same, they added several allegations to the Amended Complaint aimed at curing the statute-of-limitations problems within the original Complaint.[1] First, they averred that "Defendant continued to represent Plaintiffs with regard to the Interdonato matter subsequent to October 12, 2010, as evidenced by an invoice from Defendant to Houshang for the period December 1, 2010[,]

---

[1] Plaintiffs also added the Houshang Momenian Revocable Trust as an additional Plaintiff. They further noted that "Houshang is the trustee of the Momenian Trust, and Houshang and Momenian are the First and Second Beneficiaries." Am. Compl. ¶ 3.

to May 15, 2011." *Id.* ¶ 32. The invoice, excerpted in the Amended Complaint, seems to show that Defendant worked for Plaintiffs on the Interdonato matter through April 2011. *Id.* Plaintiffs also alleged that "[d]uring 2011 and early 2012," Houshang called Defendant "approximately every three months" regarding the Interdonato matter, asking Defendant "when he would have an opportunity to go before a judge." *Id.* ¶ 33. Defendant's response, according to Plaintiffs, was that "he was working on it." *Id.* Finally, Plaintiffs added an allegation asserting that Houshang had a conversation with Defendant on January 31, 2013—which Houshang recorded—during which Defendant told Houshang that "'[y]ou did not forfeit any of your rights on [the Interdonato matter].'" *Id.* ¶ 38.

### B.  Procedural History

On February 18, 2016, Defendant renewed his motion to dismiss, asserting that Plaintiffs' Amended Complaint still failed to state a claim. *See generally* Mem. in Support of Mot. to Dismiss Am. Compl., ECF No. 14-1 [hereinafter Def.'s Mot.]. Defendant asserted the same arguments that he had made in his original Motion to Dismiss. He argued that Plaintiffs: (1) failed to allege negligence or wrongdoing; (2) failed to allege injury to themselves personally because they transferred their property interest to the Houshang Trust; and (3) failed to assert claims within the statute-of-limitations period. *See generally id.*[2]

## III.   STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts

---

[2] As explained below, the court concludes that the allegations added by Plaintiffs in their Amended Complaint do not save their claims from being time-barred by the applicable statute of limitations. The court, therefore, does not reach Defendant's other arguments.

alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

Generally, courts are discouraged from granting motions to dismiss based on an expired limitations period.  *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981) ("There is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense.").  That is "because statute of limitations issues often depend on contested questions of fact." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Dismissal therefore is appropriate "only if the complaint on its face is conclusively time-barred." *Id.*  The court keeps these principles in mind when evaluating Plaintiffs' allegations under the applicable three-year statute of

limitations.  *See* D.C. Code § 12-301(8) (2016); *Duggan v. Keto*, 554 A.2d 1126, 1143-44 (D.C. 1989) (applying three-year limitations period under D.C. Code § 12-301(8) to both legal malpractice and breach of fiduciary duty claims).[3]

## IV.   DISCUSSION

### A.   The Discovery Rule

In *Momenian I*, the court applied the "discovery rule" applicable to cases brought under D.C. law in which the "relationship between the fact of injury and the alleged tortious conduct is obscure."  2016 WL 259641 at *4 (quoting *Bussineau v. Pres. & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986)) (internal quotation marks omitted).  "Under the discovery rule, [the limitations period of] a claim does not begin to accrue until a person knows—'or by the exercise of reasonable diligence should know'—of (1) some injury; (2) its cause in fact; and (3) some evidence of wrongdoing."  *Id.* (quoting *Bussineau*, 518 A.2d at 426).

Because a "layman may not always be aware when unsatisfactory conduct by his attorney will give rise to a malpractice action," *id.* at *5 (quoting *Williams v. Mordkofsky*, 901 F.2d 158, 162 (D.C. Cir. 1990)) (internal quotation marks omitted), this court in *Momenian I* recognized the need to afford Plaintiffs a "'reasonable period of time' to investigate and determine whether [their] counsel [had] engaged in malfeasance," *id.* (citing *Byers v. Burleson*, 713 F.2d 856, 862 (D.C. Cir. 1983)).  Yet, even allowing for this extra time, this court found that had Plaintiffs exercised reasonable diligence, they would have learned of their alleged injuries more than three years—the applicable limitations period—before they filed suit.  *Id.* at *6 ("If they had exercised reasonable diligence, Plaintiffs would have learned before May 6, 2012—*i.e.*, more than three years before they filed suit—that the claims . . . were not in fact referred to the Court and/or a Court-appointed

---

[3] Because this is a diversity action, the court applies the limitations period under District of Columbia law. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

accountant." (citations and internal quotation marks omitted)); *id.* ("Plaintiffs [ ] concede that, more than three years before they filed their Complaint, they knew that they possibly had been injured through overpayment of the Promissory Note.").

Nothing about the Amended Complaint alters the court's original conclusion that a straightforward application of the discovery rule renders Plaintiffs' claims time-barred. Plaintiffs attempt to argue that the question of when they actually discovered their claim is factual and thus cannot be decided on a motion to dismiss. Pls.' Opp'n to Mot. to Dismiss Am. Compl., ECF No. 18 [hereinafter Pls.' Opp'n], at 14-15 ("Knowledge of wrongful conduct through outside events is a factual question to be resolved by a jury and cannot be decided as a matter of law." (citing *Dawson v. Eli Lilly & Co.*, 543 F. Supp. 1330, 1334 (D.C. Cir. 1982))). They fail to acknowledge, however, that a statute-of-limitations defense may be properly asserted on a motion to dismiss under Rule 12(b)(6). "An affirmative defense that claims are barred by the statute of limitations may be asserted in a Rule 12(b)(6) motion 'when the facts that give rise to the defense are clear from the face of the complaint.'" *See Newland v. Aurora Loan Servs., LLC*, 806 F. Supp. 2d 65, 70 (D.D.C. 2011) (quoting *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).

When applying the discovery rule on a motion to dismiss, the court does not evaluate when, according to the complaint, the plaintiff first learned of his injury and its cause. Rather, the court, drawing all inferences in the plaintiff's favor, must ask: (1) when, if the plaintiff had exercised reasonable diligence in the conduct of his affairs, he would have discovered the facts relevant to his claim; and, (2) based on that determination, whether the plaintiff brought suit within the applicable limitations period. *See Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000) ("In order for the statute of limitations to begin to run, it is only necessary that the plaintiff have inquiry

notice of the existence of a cause of action. . . .  The critical question in assessing the existence *vel non* of inquiry notice is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him."); *Diamond v. Davis*, 680 A.2d 364, 381 (D.C. 1987) (per curiam) (stating that "[i]n every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all of the circumstances").

Here, a reasonably diligent person would have learned of Defendant's alleged malfeasance earlier than May 7, 2012—the day Plaintiffs received the Notice of Foreclosure from the Interdonatos and the day they claim they first learned of the injury allegedly inflicted on them by Defendant.  *See* Pls.' Opp'n at 15.  At that point, Plaintiffs' lawsuit had been settled for eighteen months, since October 10, 2010.  During that year and a half, there would have been minimal activity—certainly none in court—on the Interdonato matter.  Plaintiffs had a duty to investigate why their case remained dormant for such an extended period of time.  *See Diamond*, 680 A.2d at 381.  Through reasonable diligence—whether by checking the public record or seeking the advice of another lawyer—Plaintiffs could have learned that the reason for the inactivity was that Defendant had, allegedly without Plaintiffs' full knowledge and consent, entered into a settlement that ended the case.  Therefore, even if Plaintiffs' claims against Defendant did not start to accrue on the date of the Settlement itself, they certainly began to accrue at some point well before they received the Notice of Foreclosure on May 7, 2012.  Accordingly, the court adheres to its original conclusion:  if Plaintiffs "had exercised reasonable diligence, as the 'discovery rule' requires, they would have learned" about Defendant's alleged malfeasance "well before" May 6, 2012, the outer boundary of the three-year statute of limitations.  *Momenian I*, 2016 WL 259641 at *5-6.

**B.      Tolling of the Statute of Limitations**

Unable to avoid a straightforward application of the discovery rule, Plaintiffs assert that two equitable tolling principles—the lulling doctrine and the continuous representation rule— delayed the start of the limitations period, such that their filing of the original Complaint on May 6, 2015, was within the three-year limitations period.  The court first considers Plaintiffs' lulling argument, and then their assertion that the continuous representation rule should be applied.

*1.      The Lulling Doctrine*

In response to Defendant's first Motion to Dismiss, Plaintiffs argued that Defendant "ought not to be able to invoke the protection of the statute of limitations" because he "lull[ed] [Plaintiffs] into a false sense of security."  *Id.* at *6 (citing Pls.' Opp.'n to Mot. to Dismiss, ECF No. 10, at 12).  The court found, however, that Plaintiffs had not provided any facts to support such a claim. *Id.* at *7 ("Plaintiffs' Complaint lacks any factual averment to support their lulling assertion."). Plaintiffs now advance the same lulling argument based on their Amended Complaint.   The Amended Complaint, they assert, "does contain such [supportive] factual averments," which "are corroborated by [Plaintiffs'] Ex. 1 and 2" attached to their Opposition brief.  Pls.' Opp'n at 15. Specifically, Plaintiffs argue that Defendant lulled them into not bringing an action on their claims when Defendant (1) submitted a "statement of account" detailing work he had done on the Interdonato matter through April 2011; (2) said, in response to Houshang Momenian asking "when [Houshang] would have an opportunity to go before a judge[,]" that he was "working on it"; and (3) assured Houshang in January 2013 that "'You did not forfeit any of your rights' and that 'this was just the beginning of what's going to happen.'"  *See* Pl.'s Opp'n at 15-16.

Under District of Columbia law, "a defendant cannot assert the bar of the statute of limitations, if it appears [the defendant] has done anything that would tend to lull the plaintiff into

inaction, and thereby permit the limitation prescribed by the statute to run." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (citation and internal quotation marks omitted). District of Columbia law, however, permits only a narrow reading of the lulling doctrine. *Id.* In order for Plaintiffs to successfully assert their lulling argument, they must show that Defendant did "something that amounted to an affirmative inducement to [P]laintiffs to delay bringing action." *Bailey*, 516 A.2d at 937 (citation and internal quotation marks omitted); *see also Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (quoting *Bailey*); *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998) (stating that an act of lulling must involve "some affirmative action" on the defendant's part). "'[M]ere silence, failure to disclose, or ignorance of facts establishing a claim' generally do not rise to the level of affirmative misconduct." *East*, 718 A.2d at 157 (citation omitted). A paradigmatic example of lulling is "when a defendant promises to settle a dispute outside of court[,]" so as to discourage the plaintiff from filing suit within the statute-of-limitations period. *Jankovic*, 494 F.3d at 1087; *see also Hornblower v. George Wash. Univ.*, 31 App. D.C. 64, 75 (1908) (cited in *Bailey* and *Jankovic*).[4]

None of Plaintiffs' new allegations assert that Defendant engaged in the type of affirmative conduct that would constitute lulling. First, the "statement of account" sent from Defendant to Plaintiffs plainly is not the type of affirmative action or promise that would have induced Plaintiffs

---

[4] Cases such as *Bailey* and *Hornblower* seem to suggest that the lulling doctrine can trigger the tolling of a limitations period only if the plaintiff possesses actual knowledge of the facts that give rise to a claim. After all, a defendant cannot "induce" a plaintiff to "delay" filing suit unless the plaintiff actually knows or believes that the defendant can be sued in the first place. Here, at least two of Plaintiffs' claimed acts of lulling—the statement of account delivered in May 2011 and Defendant's statements that he was "working on" getting in front of judge—according to Plaintiffs, occurred *before* Plaintiffs first learned that Defendant had settled the Interdonato matter with prejudice. *See* Pls.' Opp'n at 15 (asserting that Plaintiffs did not "become aware of the problem [with the Settlement]" until May 7, 2012, when they received the Notice of Foreclosure). Thus, because Plaintiffs claim they did not know of Defendant's supposed malpractice at the time Defendant's alleged lulling actions occurred, the doctrine of lulling arguably does not even apply. The court need not, however, decide whether a plaintiff's knowledge of the facts giving rise to a suit is a necessary element of the lulling doctrine, because none of Defendant's alleged acts constitute an affirmative inducement made for the purpose of delaying Plaintiffs from filing suit.

to delay bringing an action.  The statement only shows that Defendant seemingly continued to work on—and inform Plaintiffs about his efforts on—the Interdonato matter until April 2011 at the latest.  Am. Compl. ¶ 32; *see also* Pls.' Opp'n, Ex. 1, ECF No. 14-1 [hereinafter Ex. 1], at 1. It cannot plausibly be construed as an attempt by Defendant to keep Plaintiffs from filing suit against him.  *See Jankovic*, 494 F.2d at 1087 (rejecting lulling claim where the plaintiff had failed to "allege[ ] [a] specific act of affirmative inducement").

Likewise, the periodic assurances supposedly made by Defendant that he was "working on" getting Plaintiffs before a judge also cannot plausibly be interpreted as an attempt to delay or prevent Plaintiffs from filing suit.  A "bare verbal promise" to take some action "at a vague future" time—which is all that Plaintiffs have alleged—is not the type of affirmative action that supports a lulling claim.  *See Bailey*, 516 A.2d at 938 (quoting *Grass v. Eiker*, 135 A.2d 153, 154 (D.C. 1957)).

Finally, the secretly recorded January 2013 conversation between Houshang and Defendant also does not help Plaintiffs avoid the limitations bar.[5]  According to Plaintiffs, the conversation "makes it clear that Houshang did not have an understanding of why he was served with a foreclosure action by the Interdonatos after settling the claim in October of 2010."  Pls.' Opp'n at 16.  But whether or not Houshang was confused during the conversation is not the critical inquiry.  Rather, the question is whether Defendant affirmatively tried to cause such confusion in order to induce Plaintiffs to delay bringing suit.  The recorded conversation evidences no such affirmative conduct.  If anything, during the conversation, Defendant denied telling Houshang that

---

[5] Defendant argues that the transcript should not be considered by the court because it was not included in the Amended Complaint.  Reply, ECF No. 19, at 6.  Plaintiffs do, however, refer to the conversation in their Amended Complaint. Am. Compl. ¶ 38.  It therefore is incorporated into the Complaint and may be considered by the court. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . .").

they would appear before a judge specifically regarding the Settlement.  *See, e.g.*, Pls.' Mot., Ex. 2, ECF No. 19-1 [hereinafter Ex. 2], at 8, 24.  Instead, he re-explained their previous litigation strategy, which was premised in part on the idea that Plaintiffs could not prove their case before a judge.  *See, e.g., id.* at 26, 53.  Defendant apparently anticipated that the Interdonatos would bring a lawsuit against Plaintiffs after they settled the first matter, and, in response, Defendant planned to raise certain defenses that he believed could not be raised in the original lawsuit.  *E.g., id.* at 27-28, 32-38, 43.  At worst, Defendant's statements suggest an ill-advised or poorly explained litigation strategy.  But they do not constitute an attempt—prior to or concurrent with the January 2013 conversation—to lull Plaintiffs into inaction.

### 2.     The Continuous Representation Rule

Plaintiffs also assert that the statute of limitations for their claims was tolled for another reason: the continuous representation rule.  *See* Pls.' Opp'n at 17-19.  The "continuous representation" rule is a doctrine applicable in cases alleging malfeasance by a lawyer.  It functions to "toll[ ] the statute of limitations on legal malpractice claims until 'the attorney's representation concerning the particular matter in issue is terminated—even if the client was on actual or inquiry notice of the attorney's malpractice before then."  *Rocha v. Brown & Gould, LLP*, 101 F. Supp. 3d 52, 68 (D.D.C. 2015), *aff'd*, No. 15-7053 (D.C. Cir. Mar. 30, 2016); *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 850 (D.C. Cir. 2005).  The primary purpose of the rule is "to avoid placing a client in the untenable position of suing his attorney while the latter continues to represent him"; the rule aims to "permit[ ] attempts to repair the attorney-client relationship or at least to end it amicably."  *Williams v. Mordkofsky*, 901 F.2d 158, 162-63 (D.C. Cir. 1990).

According to Plaintiffs, "Houshang reasonably considered Defendant, as his long-time lawyer, to still be representing him in connection with the Interdonato matter" as of January 2013. Pls.' Opp'n at 19.  Plaintiffs appear to contend that therefore, under the continuous representation doctrine, the statute of limitations did not begin to accrue until at least that date, and, thus, their Complaint, filed on May 6, 2015, would fall within the relevant three-year statute-of-limitations period.  *See id.*  The question before the court, then, is whether, based on the Amended Complaint's allegations, Defendant's representation of Plaintiffs in the "particular matter at issue"—*i.e.*, the Interdonato settlement matter—continued past May 6, 2012.  If the representation did not continue past that date, the statute of limitations would have begun to accrue more than three years before Plaintiffs filed their Complaint.

Plaintiffs argue that the same documents that show that Defendant lulled them into inaction also establish that Defendant continuously represented them through at least January 2013. *See* Pls.' Opp'n at 19.  First, Plaintiffs point to the "statement of account" sent by Defendant to Houshang, which shows that from December 2010 to April 2011, Defendant notified Plaintiff of ongoing work related to Plaintiffs' "promissory note" with the Interdonatos, although he did not charge Plaintiffs a fee for those efforts.  *See* Ex. 1.  Even if the court assumes that that the ongoing work was specifically related to the earlier Settlement, the statement of account does nothing to establish an ongoing attorney-client relationship past May 6, 2012.  Rather, at most, it only establishes an ongoing attorney-client relationship through April 2011—which means that the statute of limitations would be tolled through that date at the latest, and not through May 6, 2012, as Plaintiffs must plausibly allege to avoid the limitations bar.

Second, Plaintiffs argue that the January 2013 conversation between Houshang and Defendant demonstrates that Houshang continued to believe that Defendant was still representing

him in the Interdonato matter.  Pls.' Opp'n at 19.  According to Plaintiffs, "Defendant had been representing Houshang in a variety of matters over a lengthy period of time[,]" Am. Compl. ¶ 7, and his conversation with Houshang shows that Houshang "still considered Defendant to be his lawyer and was looking for information as to how he could overcome a *res judicata* argument" related to the Interdonato matter, Pls.' Opp'n at 19.

Although Plaintiffs are correct that "a client's perception of an attorney as his counsel is a consideration [for the court] in determining whether a[n attorney-client] relationship exists," *Matter of Lieber*, 442 A.2d 153, 156 (D.C. 1982), it is also true that "the continuous representation rule does not apply where . . . the client finds new representation in the same matter," *Jones v. Lattimer*, 29 F. Supp. 3d 5, 15 (D.D.C. 2014).  Here, Plaintiffs have expressly alleged that, as of June 14, 2012—six months *before* the recorded conversation—they hired "new counsel" to assist them in avoiding foreclosure by suing, and later settling with, the Interdonatos.  Am. Compl. ¶¶ 35-36.  Thus, even by Plaintiffs' own account, Plaintiffs terminated Defendant's representation as to the Interdonato matter at least as of June 14, 2012, precluding application of the continuous representation rule after that date.

Admittedly, June 14, 2012, is within the statute of limitations at issue in this case, and therefore, if Defendant continued to represent Plaintiffs through that date, Plaintiffs could invoke the continuous representation rule and avoid the limitations bar.  Plaintiffs, however, do not allege any *facts* that would support the inference that the attorney-client relationship with respect to the Interdonato matter continued until June 14, 2012—or even past May 6, 2012.  To the contrary, the Amended Complaint alleges little more than that, "[d]uring 2011 and early 2012, Houshang telephoned Defendant approximately every three months to discuss the Interdonato matter as well as another pending case."  Compl. ¶ 33.  But that vague allegation is simply not enough to establish

14

that Defendant's representation of Plaintiffs continued past May 6, 2012 and, therefore, it cannot bring Plaintiffs' claims within the statute of limitations.

For starters, "[e]arly 2012" is at best an ambiguous phrase, which, even under a generous reading, does not extend the attorney-client relationship into the critical time period of May 2012. Moreover, the continuous representation rule does not apply to a lawyer's "minimal participation in . . . ongoing affairs." *Encyclopedia Britannica, Inc. v. Dickstein Shapiro*, LLP, Civ No. 10-cv-0454 (JDB), 2012 WL 8466139, at *15 (D.D.C. Feb. 2, 2012); *see also Rocha*, 101 F. Supp. 3d at 72 ("The Court declines to apply the continuous representation rule in a way that would punish attorneys for providing such minimal assistance to protect their client's rights after the initial matter concludes."). This limitation on the rule exists because, if it did not, attorneys "would have substantial disincentives from providing even the barest assistance to clients regarding matters in which they are knowledgeable based on their prior representation of the client." *Encyclopedia Britannica*, 2012 WL 8466139 at *15.

In *Encyclopedia Britannica*, the court held that a telephone call between two law firms regarding litigation related to previous work done by one of the firms, which no longer represented the client, was insufficient to invoke the continuous representation rule. *See id.* Similarly, the court here concludes that Defendant's alleged quarterly telephone calls with Houshang "to discuss the Interdonto matter as well as another pending case"—a non-descript allegation, at best—is the kind of "bare assistance" about a matter that does not toll the limitations period. *See also Rocha*, 101 F. Supp. 3d at 71-72 (declining to apply the continuous representation rule where a lawyer had made efforts to negotiate a new retainer for an appeal and to prevent his client from missing an appellate filing deadline). The court's conclusion is buttressed by the fact that Plaintiffs do not make a single reference to any sort of statement of account sent to them by Defendant regarding

his work on the Interdonato matter at any point after April 2011.  Defendant apparently viewed his work on the Interdonato matter as worthy of notation—although not worthy enough to charge a fee—until April 2011, but not after that date.  The absence of any allegation by Plaintiffs that Defendant sent them additional statements of account—not even statements of account referencing their alleged quarterly phone calls—underscores that such activity by Defendant, if it occurred, constituted no more than Defendant's "minimal participation in . . . ongoing affairs."  On the facts alleged, Plaintiffs' otherwise time-barred claims cannot be saved by the continuous representation rule.

\* \* \*

The court here gave Plaintiffs an opportunity to re-plead their Complaint to avoid the statute-of-limitations bar.  It was Plaintiffs' burden to allege *facts* that would have enabled the court to plausibly infer that the limitations period had been tolled either by Defendant's efforts to lull Plaintiffs into inaction, his continuing representation of Plaintiffs, or some other equitable tolling theory.  Plaintiff, however, has failed to successfully plead facts on which the relevant statute of limitations may be tolled. Accordingly, with Plaintiff now having twice failed to assert timely claims against Defendant, the court will dismiss both Plaintiffs' Amended Complaint, and this action in its entirety, with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Dismiss and dismisses this action in its entirety with prejudice.  A separate order accompanies this Memorandum Opinion.

Dated:  September 19, 2016

Amit P. Mehta
United States District Judge