# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Houshang Momenian,** *et al.* | ) |
| **Plaintiffs,** | ) |
| v. | ) Civil No. 1:15-cv-00828 (APM) |
| **Michael M. Davidson,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.

This case returned after the D.C. Circuit vacated this court's order dismissing as time-barred claims brought by Plaintiffs Houshang and Vida Momenian and the Houshang Momenian Revocable Trust. *See Momenian v. Davidson*, 878 F.3d 381 (D.C. Cir. 2017). The D.C. Circuit instructed the court on remand to consider Defendant Michael Davidson's remaining arguments for dismissal of the Amended Complaint, which the court previously did not address. *See id.* at 391. There are two such arguments. First, Defendant asserts that the Amended Complaint lacks any allegation of negligence or wrongdoing by Defendant. *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 14 [hereinafter Def.'s Mot.]; Mem. of P&A in Support of Def.'s Mot. [hereinafter Def.'s Mem.], ECF No. 14-1, at 8–11. And, second, Defendant maintains that the complaint alleges only that the Trust was harmed as a result of Defendant's alleged malpractice, not the Momenians personally, so the Momenians cannot maintain an action against him. *Id.* at 12. In addition, Defendant argues that because he did not represent the Trust, he therefore owed

it no duty. *Id*. For the reasons that follow, the court rejects these contentions and denies Defendant's Motion to Dismiss.[1]

## II.

Defendant's first argument rests on the premise that the lawsuit Defendant brought on behalf of the Momenians against their lenders, Paul and Amelia Interdonato, "stood no chance of winning." Def.'s Mem. at 9. Defendant maintains that none of the four transactions the Momenians claimed that the Interdonatos failed to credit against the Note Modification Agreement could have been applied to the Momenians' outstanding indebtedness. *Id.* at 11 ("Nowhere do the Plaintiffs allege the existence of a single payment that should have been credited to the Plaintiffs' Note but was overlooked by [Defendant] . . ."). Defendant points out that three of the four claimed credits pre-date the Note Modification Agreement, under which the Momenians agreed to a sum certain owed to the Interdonatos on the original Note ($141,898.47) without reference to the credits, and thus these could not plausibly apply to their outstanding debt. *Id*. at 10. With respect to the fourth transaction, Defendant argues that it is implausible that the $50,000 payment from Fikru to the Interdonatos on the Fikru Note could be credited to the Momenians. *Id.* He also maintains that the alleged oral agreement between Houshang Momenian and Paul Interdonato, Pls.'s Am. Compl., ECF No. 13, ¶ 18, which forms the basis for the claimed credit of $50,000, was void under the statute of frauds and therefore could not reduce the amount owed, *see generally* Supp. Br. to Def.'s Mot., ECF No. 27.

---

[1] The court, writing primarily for the parties, does not summarize the Amended Complaint's allegations. Plaintiffs' factual averments are set forth in detail in the court's prior decisions, *see Momenian v. Davidson*, 209 F. Supp. 3d 288, 291–92 (D.D.C. 2016), *rev'd Momenian*, 878 F.3d at 381; *Momenian v. Davidson*, Civ. No. 15-cv-00828, 2016 WL 259641, at *1-2 (D.D.C. Jan. 21, 2016).

Defendant's arguments have surface appeal. The Note Modification Agreement, entered into on January 1, 2002,[2] provides that the Momenians and the Interdonatos agreed that the "balance due on said Note[3] as of the date hereof is agreed to be [$141,898.47]" and that "[s]aid balance represents adjustments and Credits agreed upon by the parties hereto." Pls.' Submission in Resp. to Oral Order of the Court, Exs. ECF No. 26-1 [hereinafter Am. Compl. Exs.], Ex. 24, at 56.[4] Thus, on its face, the Note Modification Agreement would appear to make clear that, as of its effective date, the balance due to the Interdonatos included all credits pre-dating the Agreement. Therefore, if the parties had agreed that the proceeds from any of the first three transactions were credits, those amounts ought to be subsumed within the sum certain set forth in the Note Modification Agreement. Moreover, Plaintiffs' allegation that Houshang Momenian and Mr. Interdonato agreed that the Fikru Note was additional security against Plaintiffs' original Note, and not a straightforward debt owed by Fikru to the Interdonatos, strikes the court as dubious. Indeed, the Amended Complaint arguably does not even allege a binding agreement at all. It avers no more than that Houshang *asked* Mr. Interdonato to acknowledge the Fikru Note as additional security and that Mr. Interdonato "orally agreed *to write such a document*, but in fact he never did." Am. Compl. ¶ 18 (emphasis added). Such an allegation, at best, supports an inchoate

---

[2] Although the Note Modification Agreement on its face is dated January 1, 2001, the parties agree that the true date is January 1, 2002. *See* Def.'s Mem. at 10 (referring to Plaintiffs' execution of the "2002 Note Modification Agreement").

[3] The "Note" referenced in the Agreement is the original promissory Note entered into on August 24, 1990, for $265,000. *see* Am. Compl. Exs., Ex. 24, at 56. Thus, Plaintiffs' contention that "the Note Modification Agreement was not a transaction that superseded all prior dealings between the Momenians and Interdonatos, but rather was one in a series of transactions that had no more or less legal meaning than any of the others" is a questionable proposition. Pls.' Opp'n to Def.'s Mot., ECF No. 18, at 11.

[4] The court ordered Plaintiffs to submit for its consideration the documents supporting the factual allegations made in the Amended Complaint. The court may consider these records on a motion under Federal Rule of Civil Procedure 12(b)(6) as they are "incorporated in the complaint." *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 178 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

intention to enter into a written agreement, but not a final, binding one. *See Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 363 (D.C. Cir. 1983) ("District of Columbia law permits parties to enter into an arrangement obligating them to prepare and execute a subsequent written contract, but to achieve enforceability it is necessary that [the] agreement shall have been expressed on all essential terms that are to be incorporated in the final document.") (cleaned up) (citations omitted).

However, this case does not concern a contract dispute, but rather centers on alleged legal malpractice. Therefore, what matters is Defendant's perception of the Superior Court suit's likelihood of success, his investigation of the facts, and the advice he rendered to the Momenians about that action. On that score, the Amended Complaint, and the documents referenced therein, render it plausible that Defendant in fact believed that the suit had merit at the time he filed it.

Take the complaint filed in D.C. Superior Court. That pleading not only alleged that the Interdonatos had not properly credited the Momenians with the proceeds of the four transactions, it also attached correspondence between Defendant and Mr. Interdonato. *See* Am. Compl. Exs., Ex. 31, at 79–94. In a letter dated August 14, 2008, Defendant admitted that he had obtained and reviewed the Note Modification Agreement. *See id.* at 92. He nevertheless insisted that the Interdonatos had failed to apply the proceeds from the three transactions pre-dating the Note Modification Agreement and the $50,000 payment on the Fikru Note to reduce the Momenians' remaining amount due on the Note. *Id.* at 92–93. Defendant then suggested mediation to Mr. Interdonato who apparently rebuffed the idea of settling, *id.* at 94, prompting Defendant to file suit on behalf of the Momenians eight months later on August 18, 2009, *id.* at 84. As this timeline shows, Defendant had ample opportunity to consider the legal effect of the Note Modification Agreement before filing suit, and evidently still concluded that the Momenians' claims of

4

unapplied credits were "warranted by existing law." D.C. Super. Ct. Civ. R. 11(b)(2). Yet, Defendant now contends that the very same Agreement effectively foreclosed the credits sought by the Momenians, rendering recovery in the Superior Court litigation "purely speculative." Def.'s Reply in Support of Def.'s Mot., ECF No. 19, at 3. Defendant cannot have it both ways.

In the end, although the transactions at issue are complicated and, in some cases, of uncertain legal effect, the central question for purposes of Defendant's Motion to Dismiss is whether Plaintiffs have made out plausible claims of professional negligence and breach of fiduciary duty. The court concludes that they have. Plaintiffs well-pleaded allegations, along with the supporting records, render plausible that Defendant committed malpractice and breached fiduciary duties in connection with the Superior Court action. Precisely what Defendant did in advance of filing suit, during the investigation and litigation of the case, and what advice he gave the Momenians about its likelihood of success and settling the action, must be addressed through discovery. *See* Am. Compl. ¶ 41 (alleging negligence in investigating and analysis in the case, as well as providing deficient advice concerning settlement).

### III.

Next, Defendant urges dismissal on the ground that the Amended Complaint fails to allege that Plaintiffs suffered harm as a result of Defendant's purported deficient performance. Def.'s Mem. at 12. Defendant notes that, according to the Amended Complaint, the Momenians at some point transferred their property interests into a trust, the Houshang Momenian Revocable Trust. *Id.* (citing Am. Compl. ¶¶ 31, 36). Then, in May 2012, Mr. Interdonato issued a notice of foreclosure *on the Trust*, after which the Trust sued Mr. Interdonato in D.C. Superior Court, seeking to prevent foreclosure and challenging the amounts owed. *See* Am. Compl. ¶ 34–35. That lawsuit eventually settled, with the Trust agreeing to pay the Interdonatos the sum of $85,000 in

full and final satisfaction of the Note. *Id.* ¶ 36. Under this factual retelling, Defendant argues, only the Trust was harmed by any malpractice, and not the Momenians. *See* Def.'s Mem. at 12.

Defendant reads the Amended Complaint too narrowly. It is true that Plaintiffs allege that the Trust ultimately satisfied the outstanding balance on the Note. But the Momenians also claim that they personally suffered harm as a result of Defendant's negligence. For instance, the Momenians allege that they personally overpaid the Interdonatos on the Note because, by settling the initial Superior Court action based on Defendant's advice, they never received full credit for the claims that they released. *See* Am. Compl. ¶¶ 29–30. The Momenians further allege that they incurred costs associated with the accounting done to determine the amount of overpayment on the Note, though it is not clear on the face of the Amended Complaint whether these expenses were incurred personally or by the Trust. *See id.* ¶ 42. Moreover, it might be the case—though the court reaches no firm conclusion—that Houshang and Vida Momenian, as beneficiaries of the Trust, *id.* ¶ 3, also suffered a legally cognizable injury as a result of the Trust's alleged overpayment, *cf. Reardon v. Riggs Nat'l Bank*, 677 A.2d 1032, 1037 n.12 (D.C. 1996) (noting exception to general rule that a beneficiary cannot bring an action directly against a third-partly wrongdoer, "if the beneficiary is in possession of the subject matter of the trust"). Accordingly, the court concludes that Plaintiffs have pleaded sufficient facts of harm arising from Defendant's alleged professional malpractice to survive Defendant's Motion to Dismiss.

Defendant also argues that the Trust cannot maintain a claim against Defendant, because there is no allegation that Defendant ever represented the Trust. *See* Def.'s Mem. at 12. That is a fair point, and one that the court may consider again at a later stage in this litigation, but at this time the court is reluctant to dismiss the Trust's claims on that ground. Given the allegation that "Defendant had been representing Houshang in a variety of matters over a lengthy period of time,"

6

Am. Compl. ¶ 7, discovery could plausibly reveal some connection between Defendant and the Trust that would give rise to a duty running to the Trust. Therefore, the court will permit the Trust's claims to proceed.

IV.

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is denied. Defendant shall file an answer no later than 14 days from the date of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Dated: November 6, 2018

Amit P. Mehta
United States District Judge