# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HOUSHANG MOMENIAN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 1:15-cv-00828 (APM) |
| ) | |
| MICHAEL M. DAVIDSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiffs Houshang Momenian, Vida Momenian, and the Houshang Momenian Revocable Trust are seeking to recover against the Momenians' former lawyer, Defendant Michael Davidson, for legal malpractice and breach of fiduciary duty. Plaintiffs allege that Defendant negligently represented the Momenians in connection with a D.C. Superior Court case they filed in August 2009 and dismissed with prejudice in October 2010. The D.C. Circuit reversed this court's dismissal of Plaintiffs' claims as time-barred, holding that Plaintiffs' complaint plausibly alleged facts (taken as true at the motion to dismiss stage) suggesting that the claims may have been timely. The parties have now taken discovery on this issue, and the record evidence conclusively shows that Plaintiffs filed this action well after the statute of limitations had run. The court therefore grants Defendant's motion for summary judgment.

## II.    BACKGROUND

### A.    Factual Background

In 1990, the Momenians purchased three adjacent properties, located in Southeast Washington, D.C. from Paul and Amelia Interdonato. *See* Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 47 [hereinafter Def.'s Mot.], Ex. A., Def.'s Statement of Material Facts Not in Genuine Dispute [hereinafter Def.'s SOMF], ¶ 1 (undisputed). In connection with the transaction, the Momenians executed a promissory note payable to Paul Interdonato (the "Promissory Note"), which was secured by a Deed of Trust. *Id.* ¶¶ 2–3 (undisputed). In 2009, the Momenians filed a lawsuit in D.C. Superior Court against the Interdonatos (the "Interdonato Lawsuit"), claiming that the Interdonatos had failed to credit proceeds from four separate transactions against the outstanding balance of the Promissory Note. *Id.* ¶ 48; *see also* Pls.' Mem. in Opp'n to Def.'s Mot., ECF No. 50 [hereinafter Pls.' Opp'n], Pls.' Statement of Material Facts Which Are in Genuine Dispute, ECF No. 50-1 [hereinafter Pls.' SOMF], ¶ 48. The Momenians' lawyer in the Interdonato Lawsuit was Defendant Michael Davidson. Def.'s SOMF ¶ 48; Pls.' SOMF ¶ 48.

On October 12, 2010, based on Defendant's advice, the Momenians settled the Interdonato Lawsuit for a credit of $15,000 against their outstanding debt on the Promissory Note. Def.'s SOMF ¶ 55 (undisputed); *id.* ¶ 56; Pls.' SOMF ¶ 56. The Praecipe filed by the parties stated that "[t]he Clerk of said Court will dismiss *with prejudice* this action." Def.'s SOMF ¶ 55 (undisputed); *see also* Def.'s Mot., Ex. 35, ECF No. 47-35. As part of the settlement, the Momenians continued to make payments of $1,300 per month toward the Promissory Note. Def.'s SOMF ¶ 62 (undisputed); Def.'s Mot., Ex. 36, ECF No. 47-36.

On some date before May 7, 2012, the Momenians conveyed their title to a portion of the property at issue to the Houshang Momenian Revocable Trust ("Momenian Trust"). Def.'s SOMF ¶ 71 (undisputed); *see also* Am. Compl., ECF No. 13 [hereinafter Am. Compl.], ¶ 3 (identifying the full name of the trust). Then, on May 7, 2012, Paul Interdonato issued a Notice of Foreclosure against the Momenian Trust, asserting that the Momenians owed approximately $240,000 on the Promissory Note. Def.'s SOMF ¶ 71 (undisputed); *see also* Def.'s Mot., Ex. 40, ECF No. 47-40. With the assistance of a new lawyer, Mr. Momenian and the Momenian Trust thereafter filed a lawsuit against Mr. Interdonato. Def.'s SOMF ¶ 72 (undisputed); Def.'s Mot., Ex. 41, ECF No. 47-41. The parties settled the matter on November 2, 2012. Def.'s SOMF ¶ 73 (undisputed); *see also* Def.'s Mot., Ex. 42, ECF No. 47-42.

B. **Procedural History**

On May 6, 2015, nearly three years after Paul Interdonato issued the Notice of Foreclosure, the Momenians filed suit in D.C. Superior Court against Defendant, asserting claims of legal malpractice and breach of fiduciary duty. *See generally* Compl., ECF No. 1-1. The court dismissed Plaintiffs' original complaint on statute of limitations grounds, but allowed the Momenians an opportunity to amend. *See Momenian v. Davidson*, No. 1:15-CV-00828 (APM), 2016 WL 259641 (D.D.C. Jan. 21, 2016).

The Momenians amended their complaint in February 2016, joining the Momenian Trust as an additional plaintiff. *See generally* Am. Compl. Count 1 of the Amended Complaint alleged that Defendant committed legal malpractice by: (1) failing to adequately investigate the Momenians' claims, prior to settlement, in order to accurately calculate the amounts that should have been credited to the Promissory Note; (2) failing to hire an accountant to perform an accounting to determine how much was due and owing under the Promissory Note; (3) advising

the Momenians to settle the Interdonato Lawsuit without having first performed the aforementioned accounting; (4) failing to explain to the Momenians that the October 12, 2010 Praecipe constituted a full and final settlement of all of their claims against the Interdonatos regarding the Promissory Note; and (5) failing to explain what "dismiss with prejudice" meant, or the legal consequences of such a dismissal. *Id.* ¶ 41(a)–(e). Count II characterized the same alleged acts as breaches of fiduciary duty.[1] *Id.* ¶ 46(a)–(e). Plaintiffs alleged that Defendant's negligent representation caused them to overpay the Promissory Note and incur additional legal and accounting costs while attempting to resolve their outstanding conflicts with the Interdonatos. *Id.* ¶¶ 47–48.

The Amended Complaint also included several allegations aimed at curing the statute-of-limitations problems with the original complaint. Plaintiffs claimed that "Defendant continued to represent Plaintiffs with regard to the Interdonato matter subsequent to October 12, 2010, as evidenced by an invoice from Defendant to [Mr. Momenian] for the period December 1, 2010[,] to May 15, 2011." *Id.* ¶ 32. Plaintiffs also alleged that "[d]uring 2011 and early 2012," Mr. Momenian called Defendant "approximately every three months" regarding the Interdonato matter, asking Defendant "when he would have an opportunity to go before a judge." *Id.* ¶ 33. Defendant's response, according to Plaintiffs, was that "he was working on it." *Id.* Finally, Plaintiffs added an allegation that Mr. Momenian had a conversation with Defendant on January 31, 2013, during which Defendant told Mr. Momenian that "[y]ou did not forfeit any of your rights on [the Interdonato matter]." *Id.* ¶ 38. The court again dismissed Plaintiffs' Amended Complaint as untimely. *See Momenian v. Davidson*, 209 F. Supp. 3d 288 (D.D.C. 2016).

---

[1] Because the legal malpractice and breach of fiduciary duty claims are essentially the same in this case, the court's references to the legal malpractice claim should be read to apply equally to the breach of fiduciary duty claim.

The D.C. Circuit reversed. Applying the discovery rule to evaluate the timeliness of Plaintiffs' claims, the court focused on "whether it is plausible that [Mr. Momenian's] calls to Defendant every three months for a year and a half constituted reasonable diligence under the circumstances, where those circumstances included the parties' attorney-client relationship and Defendant's repeated assurances that he was 'working on' the 2009 Litigation." *Momenian v. Davidson*, 878 F.3d 381, 390 (D.C. Cir. 2017). "[A]ssuming [the] facts pleaded in the complaint to be true," the Circuit was "not persuaded that calling one's lawyer every three months to check in on a case, and relying on the lawyer's assurances that he was 'working on it,' is insufficient to fulfill a plaintiff's duty to investigate her affairs." *Id.* The court therefore concluded that "[i]t is plausible that a reasonable person would rely on an attorney's regular assurances that he was working on a case and feel no need to investigate further," and thus remanded the case for further consideration.[2] *Id.* at 390–91.

Now before the court is Defendant's Motion for Summary Judgment. Defendant contends, among other things, that the record evidence developed by the parties during discovery conclusively shows that the Plaintiffs' claims are time-barred, warranting summary judgment in his favor. *See* Def.'s Mot. at 4.

III. **STANDARD OF REVIEW**

In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). Summary judgment is warranted "if the

---

[2] The Circuit also instructed this court to consider Defendant's two remaining arguments for dismissal, which were not addressed in the court's earlier opinions. *Id.* at 391. The court considered and rejected those arguments in *Momenian v. Davidson*, No. 1:15-CV-00828 (APM), 2018 WL 5811440, at *1 (D.D.C. Nov. 6, 2018).

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a material fact is or cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h). In reviewing the motion, "[t]he court need consider only the cited materials," though it may, at its discretion, "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## IV. DISCUSSION

The crux of this dispute is whether Plaintiffs' present suit was filed within the limitations period prescribed by District of Columbia law. The limitations period for Plaintiffs' claims is three years from the date the claims accrued. D.C. Code § 12-301(8); *see Momenian*, 878 F.3d at 388. Plaintiffs filed the instant suit on May 6, 2015, meaning that their claims are untimely if they accrued before May 6, 2012. Legal malpractice claims in the District of Columbia generally accrue

the moment a plaintiff suffers injury, *Momenian*, 878 F.3d at 388, and Plaintiffs do not dispute that they were injured by Defendant's conduct before May 6, 2012. The only question, then, is whether any rule of accrual tolled the limitations period until at least May 6, 2012. As will be seen, none did.

## A. Discovery Rule

If an injury is not readily apparent, District of Columbia courts will apply the "discovery rule," under which "a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Id.* at 388 (internal quotation marks and citation omitted). Thus, a claim accrues only when a plaintiff acquires actual or inquiry notice of a cause of action. *Id.* (citing *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)). A plaintiff is deemed to be on inquiry notice if, through the exercise of reasonable diligence in the circumstances, she would have discovered the cause of action. *Id.* The critical question is "whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him." *Id.* (quoting *Ray v. Queen*, 747 A.2d 1137, 1141–42 (D.C. 2000)). While the attorney-client relationship is an "important aspect[] of the relevant circumstances a court assesses to determine whether a plaintiff exercised reasonable diligence investigating claims against her fiduciary," the mere fact that a plaintiff was in such a relationship with the defendant does not excuse her of the duty to investigate her affairs with reasonable diligence. *Id.*

Thus, as applicable here, under the discovery rule, Plaintiffs' claims are "untimely if they knew, or with reasonable diligence would have known, of the alleged overpayment of the [Promissory] Note, some evidence of Defendant's alleged malpractice, and its causal relationship to their injury before May 6, 2012." *Id.* at 390. The record developed during discovery—

particularly a May 2011 letter from Defendant advising Mr. Momenian that the lawsuit was settled in full, and the complete absence of any evidence supporting Plaintiffs' allegations regarding the frequency and substance of telephone calls with Defendant—demonstrates that Plaintiffs had, at a minimum, inquiry notice of their claims well before May 6, 2012.

### 1. The May 2011 Letter

Plaintiffs were placed on notice of their claims in May 2011—a full year before the earliest date their claims could have accrued and still have been timely filed—when Mr. Momenian received a letter dated May 17, 2011, from Defendant discussing the Interdonato Lawsuit. Def.'s SOMF ¶ 63; *see also* Def.'s Mot., Ex. 37, ECF No. 47-37 [hereinafter May 2011 Letter]. The letter unquestionably put Plaintiffs on notice that the lawsuit had been settled in full, informing Mr. Momenian that "the *lawsuit* was settled during mediation," and advising him that "if you desire for me to perform additional services, it will be necessary for us to enter into a new agreement which sets forth the terms and scope of the anticipated representation." May 2011 Letter at 1–2 (emphasis added). Thus, the letter should have corrected any misapprehension that "the other aspects of [Plaintiffs'] claim" against the Interdonatos were still ongoing. *See* Am. Compl. ¶ 29. Had Plaintiffs been reasonably diligent in the circumstances, they would have investigated the matter and realized that they had no ongoing claims against the Interdonatos pertaining to the Interdonato Lawsuit, that they had consequently overpaid the Interdonatos, and that this injury was caused by Defendant's alleged malpractice.

Plaintiffs object that the letter was "[in]sufficient to alert Mr. Momenian to the fact that Plaintiffs' claims against the Interdonatos had been completely snuffed out," because, they say, the letter also referenced several activities that occurred after the 2010 settlement. Pls.' Opp'n at 6. For instance, Plaintiffs note that "[t]he letter speaks of Mr. Davidson working with

Mr. Momenian's accountant 'by supplying additional documents.'" *Id.* (quoting May 2011 Letter

at 1). Plaintiffs suggest that this implies that future litigation against the Interdonatos was possible,

but they take the statement out of context. In full, this paragraph of the letter reads:

> At the beginning of 2011, you requested that I review the promissory note payment schedule prepared by your accountant and work with him by supplying additional documents. I spoke with him and forwarded some documents for him to include in the calculations. Your accountant then prepared some revised, preliminary payment schedules for review and I then spoke with you regarding these schedules, stating that some of the documents your accountant needed you had not provided to him. Depending on your directives, I will again contact the accountant to discuss and assist him in preparing whatever documents you want prepared. As I mentioned to you, in consideration for your prompt payments for previous statements and the amounts included in these previous statements, I would not charge you anything for this and all is listed in the enclosed Statement as "no charge."

May 2011 Letter at 1. It is clear from the context that Defendant is referencing the monthly

payments on the Promissory Note, which Plaintiffs committed to pay in connection with the 2010

settlement. *See* Def.'s Mot., Ex. 36, ECF No. 47-36. This passage in no way contradicts the

letter's unambiguous statements that the lawsuit was settled in full, and that Defendant was

terminating his representation of the Momenians in the matter. Plaintiffs therefore were placed at

least on inquiry notice, if not actual notice, of their claims against Defendant upon receipt of the

letter.

Trying another tack, Plaintiffs contend that "there is a genuine issue as to whether

[Mr. Momenian] received the letter at all." Pls.' Opp'n at 7; *see also* Pls.' SOMF ¶ 63. Not so.

Under the common law mailbox rule, "proof of the mailing of a letter, properly addressed and

stamped," creates a rebuttable presumption that the letter "was received by the addressee." *Toomey*

*v. D.C.*, 315 A.2d 565, 567 (D.C. 1974) (quoting *Columbia Fin. Co. v. Worthy*, 141 A.2d 185, 186

(D.C. 1958)). The opponent of the mailbox rule may rebut the presumption, creating a triable issue

of fact for the jury to resolve, by supplying sworn testimony that she did not receive the letter.

*E.g.*, *Foster v. D.C.*, 497 A.2d 100, 102 (D.C. 1985); *Toomey*, 315 A.2d at 567; *McQuater v. Aetna Ins. Co.*, 287 A.2d 821, 823 (D.C. 1972).

Plaintiffs conceded during oral argument that Defendant is entitled to the mailbox rule presumption based on the record evidence, *see* Tr. of Status Conf. (Feb. 14, 2020) [hereinafter Summ. J. Tr.], at 8–9, 30, but they maintain that they have adduced facts sufficient to rebut the presumption. In particular, Plaintiffs point to Mr. Momenian's testimony that he does not recall receiving the letter, that he had not read the letter prior to his deposition, and that certain statements in the letter were "a lie." Pls.' SOMF ¶ 63. None of these contentions, even if accepted as true, is sufficient to create a genuine issue of material fact as to Mr. Momenian's receipt of the letter. The common law is clear that a party's unadorned assertion that he does not remember receiving a letter mailed to his address is insufficient to rebut the presumption. *See, e.g.*, *Am. Family Mut. Ins. Co. v. Golke*, 768 N.W.2d 729, 739 (Wis. 2009) ("Mere non-remembrance of receipt is not enough; the presumption of receipt cannot be overcome without denial."); *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 595–96 (8th Cir. 1995) (holding, under Texas law, that the mere assertion that a letter was not in the sendee's files and no one could remember receiving it was not enough to rebut the presumption).[3] Likewise, Mr. Momenian's *ex post* insistence that the statements in the letter are "a lie" has no bearing on whether he received the letter years earlier.[4]

Any possible doubt that Mr. Momenian received the May 2011 Letter is erased by the undisputed fact that Plaintiffs themselves were in possession of an enclosure that accompanied

---

[3] *See also Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1135 (D. Kan. 2015) (applying Kansas law); *Geico Indem. v. Roth*, 867 N.Y.S.2d 622, 622 (N.Y. App. Div. 2008) (applying New York law); *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (applying Illinois law); *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996–97 (5th Cir. 1989) (applying Louisiana law); *Montz v. Mead & Charles, Inc.*, 557 So. 2d 1, 5 (Ala. 1987) (applying Alabama law); *W.E. Richmond & Co. v. Sec. Nat'l Bank*, 64 S.W.2d 863, 869 (Tenn. Ct. App. 1933).

[4] At oral argument, Plaintiffs suggested that Mr. Momenian's negative reaction to the letter during his deposition implies that he would have responded to the letter had he received it. Summ. J. Tr. at 6–7. Plaintiffs have provided no support for this assertion. In any event, if the court were to presume that a party's failure to act on legally significant information contained in a letter was consistent with non-receipt, there would be no need for the mailbox rule.

the letter. The May 2011 letter on its face indicates that Defendant enclosed a "Statement of Account" detailing charges for services rendered from December 2010 to May 2011, including follow-up work on the Interdonato Lawsuit. *See* May 2011 Letter. Defendant confirmed in an uncontested sworn declaration that he provided Plaintiffs with the Statement of Account only once—as an enclosure within the May 2011 Letter—and then not again until discovery in this matter. *See* Def.'s Reply Br. in Supp. of Def.'s Mot., Ex. 45, Decl. of Michael M. Davidson, ECF No. 52. Yet, Plaintiffs disclosed their possession of the very same[5] Statement of Account in March 2016, more than two years before they would have received it in discovery, when they included it as an exhibit to their opposition to Defendant's second Motion to Dismiss. *See* Pls.' Opp'n to Mot. to Dismiss Am. Compl., ECF No. 18 [hereinafter Pls.' Opp'n to Mot. to Dismiss], Ex. 1, ECF No. 18-1. Plaintiffs could have possessed the Statement of Account in 2016 only if they had in fact received the May 2011 Letter.

Accordingly, based on both the unrebutted presumption of receipt and Plaintiffs' possession of the Statement of Account, the court finds that there is no genuine dispute that Mr. Momenian received the May 2011 Letter in or around late May 2011. Though the receipt of the letter does not automatically mean that Mr. Momenian *read* the letter, *see* Def.'s Mot., Momenian Dep. Tr., ECF No. 47-7 [hereinafter Momenian Tr.], at 196:10–11 (responding "No" to the question: "Have you read this document before?"), an ordinary person exercising reasonable diligence in the circumstances would have done so. The court therefore concludes that the

---

[5] Plaintiffs questioned at oral argument whether the Statement of Account referenced in the May 2011 Letter is the same Statement of Account that they submitted in their March 2016 filing, Summ. J. Tr. at 4, but there is no *genuine* dispute that these are one and the same. The Statement details Defendant's charges up through May 15, 2011; the Letter is dated May 17, 2011; the Letter repeatedly references an enclosed Statement of Account; and each of the charges described in the Letter is listed verbatim in the Statement. *See Trudel v. SunTrust Bank*, 924 F.3d 1281, 1285 (D.C. Cir. 2019) (explaining that a dispute is only "genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

May 2011 Letter put Plaintiffs on notice of their claims four years before they filed the instant lawsuit, making their suit untimely by a full year.

### 2. Mr. Momenian's Telephone Calls

Recall that Plaintiffs alleged in their Amended Complaint that Mr. Momenian called Defendant "approximately every three months" during 2011 and 2012, asking Defendant "when he would have an opportunity to go before a judge," and that Defendant purportedly responded that "he was working on it." *See* Am. Compl. ¶ 33. The D.C. Circuit held that, if these allegations were true, Plaintiffs might have fulfilled their duty under the discovery rule to investigate their affairs. *See Momenian*, 878 F.3d at 389 (noting that "courts have given heightened protection to a client's reliance upon her lawyer's advice and representations when evaluating a plaintiff's reasonable diligence investigating malpractice claims"). Defendant disputes these fact assertions, however, *see* Def.'s SOMF ¶¶ 67–69, and, at the summary judgment stage, the party opposing summary judgment "cannot rest on mere allegations but must set forth by affidavit or other evidence specific facts." *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 829 (D.C. Cir. 2016) (internal quotation marks and citations omitted); *see also Celotex Corp.*, 477 U.S. at 324 (explaining that "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" (internal quotation marks omitted)).

Plaintiffs have not done so. They have identified no factual support for their allegations regarding the frequency and substance of the telephone calls between Mr. Momenian and Defendant. For one, Plaintiffs have not pointed to any facts to support the allegations that Mr. Momenian spoke with his counsel every three months after the settlement and that his calls to

Defendant continued through "early 2012." Am. Compl. ¶ 33. Plaintiff testified at his deposition that he spoke to Defendant after the settlement, seemingly on more than one occasion, but neither in his deposition nor by affidavit did he specify how often those calls occurred or until when they continued. Momenian Tr. at 202–12. Even if the calls did continue through this time, there is no indication that Mr. Momenian ever inquired about the opportunity to continue litigating the Interdonato matter, or that Defendant ever indicated that the Momenians' claims were still viable, let alone affirmatively said that "he was working on" getting before the judge. *See* Am. Compl. ¶ 33. Mr. Momenian was repeatedly asked about his conversations with Defendant during his deposition, and his responses, excerpted below, are telling in what they do not say.

> Q. Okay. So after October 12 of 2010, . . . what other communication did you have with Mr. Davidson about the Interdonato matter?
>
> A. . . . I never ever anybody—or Mr. Davidson told me that we settled the case.
>
> Q. Sir, I'm asking a straightforward question. I'm just saying . . . what other conversations did you have with Mr. Davidson about this Interdonato matter after October 12 of 2010?
>
> A. I'm trying to answer. . . . [I]f I had any conversation with—Mr. Davidson was promising—promising conversation. There wasn't a bad conversation.
>
> Q. Okay.
>
> A. And I don't remember if I—what we talk, but anything that we discuss was right things and he—I never was disappointed. I was happy. Everything going good . . . .

Momenian Tr. at 205:7–206:10. Viewing the facts in the light most favorable to Plaintiffs, Mr. Momenian appears to have had conversations with Defendant after October 2010 that he found promising. But Mr. Momenian was never able to say with any specificity what these conversations entailed. Consider the following exchange:

A. But anything that—about—Interdonato was promising—

Q. What does that mean?

A. Okay. It's going on. We're going to take care of it, the way he was—he was saying—as I said—

Q. Take care of what?

A. Everything was promising . . . .

Q. What did he say was promising?

A. He said we are—we are proceeding—we are doing what we are supposed to do.

Q. Which was what?

A. Which is the way he said. I—you know, *I cannot say exactly what he said, but I was happy after conversation with him. . . . I cannot recall what exactly he said, but I was not upset after I talked to him.*

Q. Can you recall any specific action that he said he was taking?

A. I know that I was happy after talking to him. That's all I can say.

Q. Okay. So you can't recall any specific action that he was going to take? You can't recall any specific development that he was informing you occurred, right?

A. He was making sense when he was talking and making sense. That's why I was happy. I didn't—if I was unhappy, I would—I would go and see what's going on. I was happy. He was saying he was—the way he was talking, we were okay. So—and I was happy . . . .

*Id.* at 207–208 (emphasis added). These nebulous statements lack any semblance of factual

specificity that would support Plaintiffs' allegations that Mr. Momenian asked Defendant every

three months "when he would have an opportunity to go before a judge" in the Interdonato

Lawsuit, or that Defendant ever responded that "he was working on it." Am. Compl. ¶ 33.[6]

Accordingly, there is no genuine dispute that, after May 17, 2011, Mr. Davidson

"performed no work on the Interdonato [Lawsuit]," Def.'s SOMF ¶ 69, and he never told

Mr. Momenian "that he would take any specific action regarding the Interdonato [Lawsuit]," *id.*

¶ 68. Plaintiffs therefore failed to act with reasonable diligence to discover their claims against

Defendant after receiving the May 2011 Letter, rendering their claims untimely by one year.

### B. Lulling and Continuous Representation

There are two rules of accrual that Plaintiffs hint at in their opposition to Defendant's

motion: the doctrines of lulling and continuous representation. However, Plaintiffs have forfeited

these arguments by failing to even remotely develop them in their briefing. *See Gov't of Manitoba*

*v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it

only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the

argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1

(D.C. Cir. 2005))). For instance, the entirety of Plaintiffs' continuous representation argument

consists of one conclusory statement that Mr. Momenian's testimony "is sufficient to support a

finding that Mr. Davidson continued to represent Plaintiffs with regard to the Interdonato matter."

---

[6] During oral argument, Plaintiffs referenced an affidavit purportedly "attached to an earlier motion to dismiss opposition," in which Mr. Momenian "talk[s] about those phone conversations." *See* Summ. J. Tr. at 17. Plaintiffs did not cite this affidavit as part of their summary judgment briefing or specify how the affidavit creates any genuine issue of material fact. The court "need consider only the cited materials" when ruling on a summary judgment motion, Fed. R. Civ. P. 56(c)(3), and it declines Plaintiffs' belated invitation to go rooting for this ambiguously relevant affidavit, *see Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *see also* LCvR 7(h) (requiring that any opposition to a motion for summary judgment "include references to the parts of the record relied on" to demonstrate that "there exists a genuine issue necessary to be litigated"). In any event, the court reviewed the exhibits attached to Plaintiffs' second motion to dismiss, but did not find an affidavit from Mr. Momenian. *See* Pls.' Opp'n to Mot. to Dismiss.

Pls.' Opp'n at 8. Plaintiffs' lulling argument is even less developed. *See id.* To call these arguments "skeletal" would be an overstatement.

Even if not forfeited, these arguments are unavailing. The doctrine of lulling, for instance, requires a plaintiff to demonstrate that the "defendant [did] something that amounted to an affirmative inducement to plaintiff[] to delay bringing action." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (internal quotation marks and citation omitted). As discussed, Defendant did exactly the opposite, clearly communicating to Plaintiffs in May 2011 that the Interdonato Lawsuit was settled in full, and that Defendant's representation of the Momenians in the matter had terminated. Mr. Momenian's testimony that his conversations with Defendant made him "happy," *e.g.*, Momenian Tr. at 208, is a far cry from the required showing of affirmative inducement, *see Tiger Steel Eng'g, LLC v. Symbion Power, LLC*, 195 A.3d 793, 802 (D.C. 2018) ("To establish lulling, the plaintiff must show that the defendant engaged in affirmative misconduct; mere silence or failure to disclose is generally not enough." (internal quotation marks and citation omitted)).[7]

The continuous representation doctrine, "under which a malpractice claim will not accrue until the representation is terminated," *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C. 2011) (internal quotation marks and citation omitted), is inapposite for similar reasons.

---

[7] Plaintiffs also asserted in their Amended Complaint that Defendant told Mr. Momenian on January 31, 2013, that "[y]ou did not forfeit any of your rights on [the Interdonato matter]." Am. Compl. ¶ 38. Plaintiffs did not raise this conversation in their summary judgment briefing and so the court does not consider it. *See* Fed. R. Civ. P. 56(c)(3); LCvR 7(h). Even if this fact were properly before the court, however, it would not support any (validly preserved) claim of lulling for two reasons. First, the statement is taken out of context; Defendant was explaining that Mr. Momenian did not give up any rights to assert defenses if the Interdonatos brought any future litigation, but he repeatedly explained, and Mr. Momenian clearly understood, that the Momenians had settled the Interdonato Lawsuit in full and given up their affirmative claims against the Interdonatos. *See* Pls.' Opp'n to Mot. to Dismiss. Second, by the time this conversation occurred, the Momenians had already retained independent counsel and entered into a Settlement Agreement and Mutual Release of Claims with the Interdonatos. *See* Am. Compl. ¶ 36. Defendant's statements therefore could not have caused Plaintiffs to believe that they still had viable claims against the Interdonatos, and consequently could not have induced Plaintiffs to delay bringing the instant action against Defendant.

The May 2011 Letter unequivocally terminated Defendant's representation of the Momenians regarding the Interdonato Lawsuit, *see* May 2011 Letter at 2,[8] and there is no genuine dispute that, after May 2011, "[t]he parties did not enter into any such new agreement," Def.'s SOMF ¶ 64; Plaintiffs never asked Defendant to perform any particular actions regarding the Interdonato Lawsuit, *id.* ¶ 68; and Defendant never performed any additional work on the matter, *id.* ¶ 69.

\* \* \*

Accordingly, no rule of accrual tolled the statute of limitations, which ran a full year before Plaintiffs filed this action. Plaintiffs' claims are therefore time-barred. *See* D.C. Code § 12-301(8).

## V.        CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, ECF No. 47. The court denies as moot Defendant's Motion to Strike, ECF No. 48; Defendant's Motion in Limine, ECF No. 55; and Defendant's Motion to Continue Trial, ECF No. 56. A final Order accompanies this Memorandum Opinion.

Dated: March 1, 2020

Amit P. Mehta
United States District Judge

---

[8] Though Defendant may have continued to represent the Momenians in other matters after May 2011, the only relevant inquiry is when Defendant's representation regarding the Interdonato Lawsuit ceased. *See Bleck v. Power*, 955 A.2d 712, 715 (D.C. 2008) ("[U]nder the 'continuous representation rule,' a client's legal malpractice claim 'does not accrue until the attorney's representation *concerning the particular matter in issue* is terminated.'" (emphasis added) (quoting *R.D.H. Commc'ns, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997))); *see also Stevens v. Lake*, 615 So.2d 1177, 1182 (Miss. 1993) (holding that the fact that an attorney represented a client on other, unrelated matters after the alleged malpractice occurred did not toll the statute of limitations).